**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIEONA KNIGHTEN, on behalf of herself and similarly situated laborers, | |
| Plaintiff, | Case No. |
| | Judge |
| v. | Magistrate Judge |
| ASSEMBLERS, INC. and TOTAL STAFFING SOLUTIONS, INC., | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Kieona Knighten ("Plaintiff"), on behalf of herself and all other similarly situated laborers, for her Complaint against Assemblers, Inc. ("Assemblers") and Total Staffing Solutions, Inc. ("Total Staffing") (collectively "Defendants"), states as follows:

## I.      INTRODUCTION

1.      This lawsuit arises under the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981") for: 1) Total Staffing's discriminatory practices against Plaintiff and other similarly situated African American laborers in the assignment of laborers to Assemblers in violation of Section 1981; 2) Assemblers' failure to accept the assignments of, to promote and/or to convert to permanent status Plaintiff and other similarly situated African American laborers in violation of Section 1981; and 3) Total Staffings' failure to attempt to place Plaintiff and other similarly situated African American laborers into permanent positions with Assemblers after Assemblers informed Total Staffing of its plan to hire permanent employees for positions for which Plaintiff and other similarly situated African American laborers from Total Staffing were qualified in violation of the Illinois Day and Temporary Labor Services Act ("IDTLSA").

2.      Assemblers operates food manufacturing and packaging facilities in Bedford Park, McCook, and Chicago, Illinois. Assemblers staffs its operation primarily through temporary employment agencies on the west and southwest side of Chicago, including but not limited to Total Staffing. Beginning in or about November 2015 and continuing on thereafter until in or about August 2018, Plaintiff, who is African American, was qualified to work at Assemblers and sought work assignments at Assemblers through Total Staffing but was repeatedly denied the opportunity to be assigned work at Assemblers. When Plaintiff was finally assigned to Assemblers in August 2018, she learned that other non-African American laborers had been consistently assigned to work at Assemblers through Total Staffing and other staffing agencies during the years that she had spent calling the agency and asking about work. Additionally, beginning in or around August 2018 and continuing until June 2020, Plaintiff regularly requested to be assigned to other job assignments at Assemblers which would have improved her value to the company and given her more opportunities to be assigned to Assemblers, but Assemblers consistently denied her the opportunity to perform said roles in favor of other non-African American laborers. In addition, when Assemblers had permanent positions to fill, Assemblers regularly passed over Plaintiff and other similarly situated African American for such positions.

3.      Plaintiff will seek to certify her Section 1981 claims (Counts I and II) and her IDTLSA claim (Count III) as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b).

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's Section 1981 claims pursuant to 28 U.S.C. §1331, arising under 42 U.S.C. §§ 1981. This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. §1367.

5.     Venue is proper in this judicial district as a substantial number of the facts and events giving rise Plaintiff's claims occurred in this judicial district and as Defendants maintained offices and transacted business within this jurisdiction.

### III.     PARTIES

A.    **Plaintiff**

6.     Plaintiff Kieona Knighten:

    a.     is African American and is a resident of Indiana;

    b.     sought work through Total Staffing's branch office located at 3148 S. Ashland Ave, Chicago, IL 60608 within the period of around November 2015 through the present;

    c.     is and, at all relevant times, has been qualified to perform the jobs at Assemblers;

    d.     is, and at all relevant times, has been available to perform the jobs at Assemblers;

    e.     is and, at all relevant times, has been a laborer seeking work assignments from Total Staffing in the types of jobs that were available at Assemblers;

    f.     is and, at all relevant times, has been an "employee" of Total Staffing as that term is defined in 42 U.S.C. § 1981; and

    g.     is and, at all relevant times, has been an "employee" of Assemblers as that term is defined in 42 U.S.C. § 1981.

    h.     is and, at all relevant times, has been employed by Defendant Total Staffing as a "day or temporary laborer" (hereafter "laborer") as that term is defined by the IDTLSA, 820 ILCS 175/5.

B.    **Defendants**

7.    Defendant Assemblers:

    a.    is a corporation organized under the laws of the State of Illinois;

    b.    is located in and has, at all relevant times, conducted business in Illinois and within this judicial district; and

    c.    is, and at all relevant times, has been a joint "employer" of Plaintiff as that term is defined in 42 U.S.C. § 1981(c); and

    d.    is, and at all relevant times, has been a "third party client" company of Assemblers as that term is defined by the defined by the IDTLSA, 820 ILCS 175/5.

8.    Defendant Total Staffing:

    a.    is a corporation organized under the laws of the State of Illinois;

    b.    is and, at all relevant times, has been located in and conducted business in Illinois and within this judicial district;

    c.    is and, at all relevant times, has been a joint "employer" as that term is defined by 42 U.S.C. § 1981(c);

    d.    is and, at all relevant times has been engaged in the business of employing day or temporary laborers to provide services, for a fee, to third party clients, including Assemblers, pursuant to contracts between itself and such third party clients;

    e.    is and, at all relevant times has been a "day and temporary labor service agency" (hereafter "Staffing Agency") as defined by the IDTLSA, 820 ILCS 175/5;

## IV. FACTUAL BACKGROUND

9.      The temporary staffing industry is one of the fastest-growing sectors of the modern job market. Upon information, there are more than 300 temporary staffing agencies in Illinois with over 900 branch offices throughout the state.  Like for-profit firms in most industries, temporary staffing agencies stay in business by being responsive to the preferences of their customers, also known as "client companies."  Accordingly, temporary staffing agencies purport to act on the requested preferences of their client companies when making referrals of laborers.

10.      At all relevant times, Total Staffing has been in the business of finding third party client companies, including Assemblers, who need the services of additional labor, selling those companies the services of temporary laborers, and then continually recruiting temporary laborers to fulfill that service.

11.      Total Staffing operates as an employment agency with an office located at 3148 S Ashland Ave., Chicago, IL 60608 ("Ashland Office"), and at other locations in Illinois.

12.      At all relevant times, Total Staffing has acted as an agent of its client companies, including Assemblers, in recruiting, training, assigning and paying laborers to work at client companies, including Assemblers.

13.      On information, Assemblers is a food packaging and manufacturing company. *See* https://www.assemblers.com/ (last visited June 24, 2020).

14.      At all relevant times, Assemblers has employed the vast majority of the laborers at its facility located at 5139 West 73rd Street, Bedford Park, IL 60638 through employment agencies, including Total Staffing.

15.      At all relevant times, Total Staffing has acted as a joint employer with Assemblers in the assignment of laborers to work at Assemblers.

16.     As part of its business, Total Staffing is constantly engaged in recruiting low and moderately-skilled laborers to fill ongoing work orders, meaning that when a laborer seeks an assignment through Total Staffing, such laborers are seeking a work assignment at any third party client companies to which Total Staffing supplies labor, including Assemblers.

17.     Total Staffing permits walk-ins to come to one of their offices, including its Ashland Office, to seek work assignments.

18.     In 2013 or 2014, Plaintiff sought a work assignment from Total Staffing by traveling to its Ashland Office. Total Staffing instructed Plaintiff to fill out an application, in which she provided her name, phone number, and other contact information.

19.     On the same day that Plaintiff filled out her application, Total Staffing informed Plaintiff that in order to receive job assignments she would have to call Total Staffing on any given day and ask if any job assignment were available, at which point she would be sent on a job assignment if an assignment were available.

20.     On the same day that Plaintiff filled out her application with Total Staffing or shortly thereafter, Total Staffing provided Plaintiff with a Total Staffing employee ID and had her watch an orientation video.

21.     When Plaintiff sought work from Total Staffing's Ashland Office, she was seeking work at any of Total Staffing's client companies, not a specific one.

22.     The jobs for which Total Staffing's Ashland Office refers candidates do not require any specific skills, training, or qualifications, including the jobs at Assemblers.

23.     Within the period of approximately July 6, 2016 and the present, Plaintiff and, upon information and belief, other similarly situated African American laborers, sought work assignments through the Total Staffing Ashland Office while work assignments were being made to Assemblers, but did not receive such assignments.

24.     Within the period of July 6, 2016 to the present, Plaintiff and, upon information and belief, other similarly situated African American laborers, were available to be assigned work by phone or in person through the Total Staffing Ashland Office on numerous occasions on days when positions were available at Assemblers through the Ashland Office, for which Plaintiff and other similarly situated African American laborers were qualified, but they did not receive an assignment.

25.     In fact, after putting in her application with the Total Staffing Ashland Office in 2013 or 2014, Plaintiff either did not receive any work assignments, or only received short and sporadic work assignments, until in or around November 2015 when she was assigned by Total Staffing to work at Assemblers' Bedford Park facility.

26.     During her 2015 assignment to Assemblers, which lasted only around two months, Plaintiff observed that almost no African American employees were being assigned to work at the Assemblers Bedford Park facility through Total Staffing and other staffing agencies.

27.     During the November 2015 assignment to Assemblers, Plaintiff observed that the overwhelming majority of laborers who worked at the Assemblers Bedford Park facility through its employment agencies, including Total Staffing, were non-African American, Hispanic laborers.

28.     From the end the November 2015 assignment to Assemblers until around August 2018, Total Staffing only sent Plaintiff on one or two brief assignments to client companies, none of which were Assemblers.

29.     From the end of Plaintiff's November 2015 assignment to Assemblers until around August 2018, Total Staffing failed or refused to assign Plaintiff to work at Assemblers.

30.     From the end of Plaintiff's November 2015 assignment to Assemblers until in or around August 2018, Plaintiff called Total Staffing regularly to inquire about work. Every time

Plaintiff called, Total Staffing told her that no work was available and that Total Staffing would call her as soon as work became available.

31.     From the end of Plaintiff's 2015 assignment to Assemblers until in or around August 2018, Total Staffing never called Plaintiff to tell her about work opportunities at Assemblers.

32.     In or around August 2018, Plaintiff went directly to Assemblers at its Bedford Park facility to seek work.

33.     While Plaintiff was at Assemblers in August 2018, she encountered an Onsite employee of another staffing agency and was instructed she would have to apply through a staffing agency.

34.     In or around August 2018, following Plaintiff's inquiry into possible work assignments at Assemblers, Total Staffing instructed Plaintiff to complete an updated application.

35.     Beginning in August 2018, Plaintiff began receiving consistent assignments though Total Staffing to Assemblers' Bedford Park facility.

36.     While working at Assemblers again beginning in August 2018, Plaintiff learned that other non-African American laborers that she had worked alongside during her first placement with Assemblers in 2015 had been receiving consistent assignments to Assemblers through Total Staffing during times that Total Staffing had told her there was no work available.

37.     From August 2018 to June 2020, Plaintiff observed that less than 5% of the approximately two hundred (200) laborers assigned to Assemblers' Bedford Park facility through all of its staffing agencies or working as permanent employees of Assemblers were African American, while all of the remaining laborers appeared to be non-African American Hispanic laborers.

38.     At all relevant times, the overwhelming majority of laborers who have worked at the Assemblers Bedford Park facility through its employment agencies, which includes Total Staffing, have been non-African American Hispanic employees.

39.     At all relevant times, almost no African American laborers have been assigned to work at the Assemblers Bedford Park facility.

40.     Plaintiff is and, at all relevant times, has been qualified to perform the jobs at Assemblers.

41.     Other African American laborers who sought work assignments from Total Staffing, Assemblers' other staffing agencies or directly from Assemblers have similarly been qualified to perform the jobs at Assemblers.

42.     Total Staffing failed or refused to assign Plaintiff to work at Assemblers on multiple occasions when work was available because of her race, African American.

43.     Total Staffing failed or refused to assign other similarly situated African American laborers to work at Assemblers on multiple occasions when work was available because of their race, African American.

44.     Total Staffing assigned other, non-African American laborers to work at Assemblers even though they sought work assignments after Plaintiff and, upon information and belief, other similarly situated African American laborers who were not given assignments at Assemblers.

45.     Assemblers had the authority, and exercised that authority, to select the characteristics of laborers that Total Staffing assigned and did not assign to work at its facility.

46.     Assemblers likewise had the authority, and exercised that authority, to select the characteristics of laborers that its other staffing agencies assigned and did not assign to work at its facility.

47.     On information and belief, Total Staffing failed to assign Plaintiff and other similarly situated African American laborers out of its Ashland Office to work at Assemblers, because it was complying with a discriminatory request of Assemblers, to steer African American laborers away from Assemblers.

48.     On information and belief, Assemblers' other staffing agencies failed to assign African American laborers to work at Assemblers, because they were complying with a discriminatory request of Assemblers, to steer African American laborers away from Assemblers.

49.     Assemblers was aware or should have been aware that Total Staffing has been engaging in a discriminatory practice of assigning almost exclusively non-African American Hispanic employees to work at Assemblers.

50.     Assemblers was aware or should have been aware that its other staffing agencies have been engaging in a discriminatory practice of assigning almost exclusively non-African American, Hispanic employees to work at Assemblers.

51.     Assemblers failed to exercise reasonable care in ensuring that Total Staffing and its other staffing agencies, as agents of Assemblers, were not engaging in a discriminatory assignment practice.

52.     In or around August 2018, after Plaintiff was finally assigned to Assemblers again, up until June 2020, Plaintiff regularly requested to complete various tasks in order to improve her chances of being granted permanent employee status by Assemblers, but Assemblers consistently denied her requests to take on such tasks.

53.     From in or around August 2018 up until June 2020, Assemblers regularly granted non-African American Hispanic laborers the opportunity to complete various tasks that Plaintiff requested to complete after Plaintiff requested to complete said tasks even though those non-African American Hispanic laborers were no more qualified to complete the tasks than Plaintiff.

10

54. For example, in late winter or early fall of 2019, Plaintiff requested to fill in for another worker in a role that involved the printing of labels, and Plaintiff was qualified for such a role because she had printed off labels as part of her regular duties.

55. Assemblers supervisory employee Mari (last name unknown) instead assigned the role to a non-African American Hispanic laborer. The Hispanic employee informed Plaintiff that, prior to receiving the assignment, she had only been working for Assemblers for two days at a different facility.

56. Plaintiff had more experience working with Assemblers and more familiarity working with Assemblers systems, and thus was more qualified for the role than the Hispanic laborer.

57. In June 2020, when Assemblers employee Sylvia (last name unknown), who is a non-African American Hispanic employee, asked Plaintiff's non-African American Hispanic co-worker if she was available to fill in for a position that involved gluing, Plaintiff informed Sylvia that she was also available to fill in for the position.

58. Sylvia informed Plaintiff that Plaintiff could not fill in for the position because she did not have gluing experience, and Plaintiff informed Sylvia that she had in fact done gluing work the week before.

59. Sylvia then invited a non-African American Hispanic laborer, who had less experience than Plaintiff, having just started working at Assemblers in 2020, to fill the gluing position.

60. On information and belief, Assemblers rejected Plaintiff's requests to perform certain tasks because of Plaintiff's race, African American.

61.     After finally being assigned to Assemblers again, from around August 2018 up until June 2020, Plaintiff regularly asked representatives of both Total Staffing and Assemblers if there were any permanent positions at Assemblers to which she could be considered.

62.     Each time she asked, Defendants told Plaintiff that no such permanent positions were available.

63.     From August 2018 up until the present, Defendants have not informed Plaintiff about any permanent positions at Assemblers or invited her to submit herself for consideration for any such permanent positions.

64.     Defendant Assemblers did in fact have open permanent positions that Plaintiff was qualified for during times that Assemblers told Plaintiff that none were available,  and was converting other temporary employees to permanent status.

65.     For example, in or around November 2018 Assemblers converted a non-African American temporary laborer named Griselda (last name unknown) to a permanent position.

66.     On information and belief, Total Staffing was aware that Assemblers had open permanent positions that Plaintiff was qualified for and was converting temporary employees into such positions during times that Total Staffing told Plaintiff that  no such positions were open at Assemblers.

67.     Plaintiff was and at all relevant times had been equally qualified to work at Assemblers as non-African American Hispanic laborers who were informed about and offered permanent positions at Assemblers after Plaintiff asked Defendants about such positions.

68.     On information and belief, other similarly situated African American laborers were equally qualified to work at Assemblers as non-African American Hispanic laborers who were informed about and offered permanent positions at Assemblers.

69.     On information and belief, all of the temporary laborers that Assemblers informed about permanent positions at Assemblers and converted to permanent status during the relevant period were non-African American laborers, all or most of whom were non-African American Hispanic laborers.

70.     Assemblers failed or refused to inform Plaintiff about and convert her to permanent positions with Assemblers because of her race, African American.

71.     On information and belief, Assemblers failed or refused to inform other similarly situated African American laborers about and convert them to permanent positions with Assemblers because of their race, African American.

72.     Assemblers informed other, non-African American laborers about permanent positions with Assemblers and converted them to permanent status even though they had no more qualification than Plaintiff and asked Assemblers about such job openings after Plaintiff.

73.     On information and belief, Assemblers informed other, non-African American laborers about permanent positions with Assemblers and converted them to permanent status even though they had no more qualification than other similarly situated African American laborers.

## V.     CLASS ACTION ALLEGATIONS

74.     Plaintiffs will seek to certify her claims for race discrimination arising under Section 1981 (Counts I and II) and her claims arising under the IDTLSA (Count III) as class actions.

75.     The "Section 1981 Class" (Counts I and II) that Plaintiff seeks to represent is made up of and defined as: "Plaintiff and all other African Americans who sought work assignments at Assemblers directly or through Total Staffing Solutions, Inc. or Assemblers' other staffing agencies and were otherwise eligible to work at the Assemblers' Bedford Park facility but

who, on one or more occasions, were not given an assignment or position at Assemblers' Bedford Park facility between July 6, 2016 and the date of judgment."

76.     The "IDTLSA Class" (Count III) that Plaintiff seeks to represent is made up of and defined as: "Plaintiff and all other African Americans who sought work assignments at Assemblers through Total Staffing Solutions, Inc. and were otherwise eligible to fill a permanent position at the Assemblers' Bedford Park facility similar to positions being filled by Total Staffing Solutions, Inc. at Assemblers' Bedford Park facility between July 6, 2017 and the date of judgment."

77.     Certification of the class pursuant to Fed. R. Civ. P. Rule 23(a) and (b) is warranted because:

    a.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendants are located in this district;

    b.     The class is so numerous that joinder of all members is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff is aware that hundreds of laborers were assigned to work at Assemblers by Total Staffing and other staffing agencies each day between July 6, 2016 and the date of the judgement.

    c.     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members. These common questions of law and fact include, without limitation:

        (i)     Whether Defendant Assemblers has or has had a policy or pattern and practice in place in its assignments to Assemblers that has resulted in discrimination against African American laborers;

14

(ii)     Whether Assemblers has engaged in a pattern or practice of denying employment to African American laborers because of their race;

(iii)    Whether Assemblers directed Total Staffing and its other staffing agencies to refrain from assigning African American laborers to work at that client company's Bedford Park worksite;

(iv)    Whether Assemblers and Total Staffing are joint employers of the laborers assigned to work at Assemblers' Bedford Park facility;

(v)     Whether Assemblers and its other staffing agencies are joint employers of the laborers assigned to work at Assemblers' Bedford Park facility;

(vi)    Whether the choices Total Staffing made of which laborers it assigned for work through the Total Staffing Ashland Office were made in conformity with directions provided by their client company Assemblers;

(vii)   Whether Assemblers failed to exercise reasonable care to prevent their agent, Total Staffing, from engaging in discriminatory assignment practices;

(viii)  Whether Assemblers failed or refused to accept the assignments of, to promote and/or to convert to permanent status African American laborers because of their race, African American;

(ix)    Whether conduct complained of herein constitutes a violation of Section 1981;

(x)     Whether during the relevant period Defendant Total Staffing ever became aware that Defendant Assemblers was planning to fill permanent positions at its Bedford Park facility similar to the positions for which laborers were being provided by Total Staffing;

(xi)    Whether conduct complained of herein constitutes a violation of the IDTLSA;

(xii)   Whether Plaintiff and other members of the Section 1981 Class and IDTLSA Class are entitled to, among other things, injunctive and other equitable relief against Total Staffing and Assemblers, and if so, the nature and extent of such injunctive and other equitable relief.

15

d.    Plaintiff will fairly and adequately represent and protect the interests of the Section 1981 and IDTLSA Class Members. Plaintiffs' Counsel is competent and experienced in litigating discrimination and other employment class actions;

e.    The class representative and the members of the Section 1981 Class and IDTLSA Class have been subject to, and challenge, the same practices;

f.    Issues common to the class predominate over issues unique to individual class members, and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy;

g.    Adjudication of these claims as a class action can be achieved in a manageable manner;

h.    The class representative, class members, and Defendants have a commonality of interest in the subject matter and remedies sought and the class representative is able to fairly and adequately represent the interest of the class. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions creating a hardship on the class members, Defendants, and the Court.

78.    Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**COUNT I**
**Violation of 42 U.S.C. § 1981– Race Discrimination**
**Plaintiff on behalf of herself and a class of similarly situated African American laborers as against Defendant Assemblers and Total Staffing**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 78 as though set forth herein.

79.     This Count arises under Section 1981 for Defendant Assemblers' discriminatory practices in filling its labor force through its agents or employment agencies, including Total Staffing and other staffing agencies, described more fully herein and specifically in paragraphs 9 - 51, *supra*, resulting in the disparate treatment of Plaintiff and a class of African American laborers.

80.     As described more fully herein and specifically in paragraphs 9 - 51, *supra*, Defendants Assemblers intentionally discriminated against Plaintiff and other similarly situated African American laborers based on their race, African American, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981.

81.     Defendant Assemblers made discriminatory requests of its agent for assigning laborers, Total Staffing, in that, on information and belief, Defendant Assemblers requested that its agent steer Plaintiff and other similarly situated African Americans away from work at Assemblers' Bedford Park facility based on their race, African American.

82.     In the alternative, Defendant Assemblers knew or should have known that its agent, Total Staffing, was engaged in the discriminatory practice of assigning laborers to work at Assemblers.

83.     Assemblers failed to exercise reasonable care to ensure that its agents for assigning laborers to work at Assemblers, which includes Total Staffing, did not engage in discriminatory assignment practices.

84.     Defendant Total Staffing failed or refused to assign African American laborers to work at Assemblers in favor of non-African American, Hispanic employees on the basis of their race, African American, as described more fully in paragraphs 9 - 51, *supra*.

85.     Defendant Total Staffing engaged in discriminatory assignment practices against Plaintiff and other similarly situated African American laborers on the basis of their race, African

American, as described more fully in paragraphs 9-51, *supra*, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981.

86.     As described more fully herein and specifically in paragraphs 9 - 51, *supra*, Defendant Total Staffing engaged in a pattern and practice of racial discrimination against Plaintiff and other similarly situated African American laborers based on their race, African American.

87.     As described more fully in paragraphs 9 - 51, *supra*, Defendant Total Staffing's discrimination against Plaintiff and other similarly situated laborers based on their race, African American, was intentional.

88.     On information and belief, Defendant Total Staffing's failure to assign Plaintiff and other similarly situated African American laborers to work at Assemblers was, in part, because it was complying with a discriminatory request from Assemblers to steer African American laborers away from Assemblers in favor of Latino laborers.

89.     Defendant Total Staffing failed to exercise reasonable care to ensure that its agents for assigning laborers to work at Assemblers' Bedford Park facility did not engage in discriminatory assignment practices.

90.     Defendants Assemblers and Total Staffings' discrimination against African American laborers was based on Plaintiff's and similarly situated laborers' race, African American, and in violation of 42 U.S.C. §1981.

91.     As a direct and proximate result of the acts or omissions of Defendants Assemblers and Total Staffing alleged in paragraphs 9 - 51, *supra*, Plaintiff and similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

92.     Defendants Assemblers and Total Staffings' conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff and the Section 1981 Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Assemblers and Total Staffing pursuant to Rule 23;

B.  enjoin Assemblers and Total Staffing from continuing or permitting future violations of Section 1981 for racial discrimination against African American laborers;

C.  enter a judgment in their favor and against Assemblers and Total Staffing for back pay and front pay damages for Plaintiff and the Class in amounts to be determined at trial;

D.  enter a judgment in their favor and against Assemblers and Total Staffing for punitive damages for Plaintiff and the Class in amounts to be determined at trial;

E.  for all reasonable attorney's fees and costs in bringing this action; and

F.  for such other relief as this Court deems just and equitable.

## COUNT II
**Violation of 42 U.S.C. § 1981 – Race Discrimination**
**Plaintiff on behalf of herself and a class of similarly situated African American laborers as against Defendant Assemblers**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 92 as though set forth herein.

93.     This Count arises under Section 1981 for Defendant Assemblers' discriminatory practices in promoting and converting to permanent status laborers as described more fully herein and specifically in paragraphs 52 - 73, *supra*, resulting in disparate treatment of Plaintiff and a class of African American laborers.

94.     Defendant Assemblers engaged in discriminatory promotion and conversion practices against Plaintiff and other similarly situated African American laborers on the basis of their race, African American, as described more fully in paragraphs 52 - 73, *supra*, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981.

19

95. As described more fully herein and specifically in paragraphs 52 - 73, *supra*, Defendant Assemblers engaged in a pattern and practice of racial discrimination against Plaintiff and other similarly situated African American laborers based on their race, African American.

96. As described more fully in paragraphs 52 - 73, *supra*, Defendant Assemblers' discrimination against Plaintiff and other similarly situated laborers based on their race, African American, was intentional.

97. Defendant Assemblers failed or refused to promote and convert to permanent status Plaintiff and other similarly situated African American laborers in favor of non-African American Hispanic employees on the basis of their race, African American, as described more fully in paragraphs 52 - 73, *supra*.

98. Defendant Assemblers' conduct in not promoting and converting to permanent status Plaintiff and other similarly situated African American laborers was willful and/or reckless, warranting the imposition of punitive damages.

99. As a direct and proximate result of the willful and reckless acts or omissions of Defendant Assemblers alleged herein and in paragraphs 52 - 73, *supra*, Plaintiff and similarly situated African American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

WHEREFORE, Plaintiff and the Section 1981 Class respectfully pray that this Court:

A. allow this action to proceed as a class action against Assemblers pursuant to Rule 23;

B. enjoin Assemblers from continuing or permitting future violations of Section 1981 for racial discrimination against African American laborers;

C. enter a judgment in their favor and against Assemblers for back pay and front pay damages for Plaintiff and the Class in amounts to be determined at trial;

D. enter a judgment in their favor and against Assemblers for punitive damages for Plaintiff and the Class in amounts to be determined at trial;

E.  for all reasonable attorney's fees and costs in bringing this action; and

F.  for such other relief as this Court deems just and equitable.

## COUNT III
**Violation of Illinois Day and Temporary Labor Services Act, 820 ILCS 175/33 –
Permanent Placement**
**Plaintiff on behalf of herself and a class of similarly situated African American laborers as
against Defendant Total Staffing**
***Class Action***

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 99 as though set forth herein.

100.    This Count arises under Section 33 of the IDTLSA for Defendant Total Staffing's failure to attempt to place Plaintiff and other similarly situated African American laborers into permanent positions with Assemblers, as detailed in paragraphs 61 - 73, *supra*.

101.    The ILDTSA obligates Staffing Agencies to attempt to place a current temporary laborer into a permanent position with a client when the client informs the agency of its plan to hire a permanent employee for a position like the positions for which employees are being provided by the agency at the same work location. *See* 820 ILCS 175/33.

102.    On information and belief, on one or more occasions during the relevant time period, Assemblers informed Defendant Total Staffing of its plan to hire a permanent employee for a position at its Bedford Park location like the position for which Plaintiff and other similarly situated employees were being provided.

103.    When informed by Assemblers of its plan to hire a permanent employee for a position at its Bedford Park location like the position for which Plaintiff was being provided Total Staffing made no attempt to place Plaintiff into the permanent position.

104.    On information and belief, when informed by Assemblers of its plan to hire permanent employees for positions at its Bedford Park location like the positions for which other

similarly situated African American laborers were being provided Total Staffing made no attempt to place other similarly situated African American laborers into the permanent position.

105.     Defendant Total Staffing's failure to attempt to place Plaintiff into a permanent position at Assembler's Bedford Park location after being notified that Assemblers was hiring a permanent employee for a position like the position for which Plaintiff was being provided violated the IDTLSA.

106.     Defendant Total Staffing's failure to attempt to place other similarly situated employees into a permanent position at Assembler's Bedford Park location after being notified that Assemblers was hiring a permanent employee for a position like the position for which other similarly situated employees were being provided violated the IDTLSA.

WHEREFORE, Plaintiff and the IDTLSA Class respectfully prays that this Court:

A.  allow this action to proceed as a class action against Total Staffing pursuant to Rule 23;

B.  enjoin Total Staffing from continuing or permitting future violations of the IDTLSA;

C.  enter a judgment in their favor and against Total Staffing for compensatory and actual damages for Plaintiff and the IDTLSA Class in amounts to be determined at trial;

D.  declare that Defendant Total Staffing violated the Permanent Placement provisions of the IDTLSA, 820 ILCS 175/33;

E.  for all reasonable attorney's fees and costs in bringing this action as provided by the IDTLSA, 820 ILCS 175/95; and

F.  for such other relief as this Court deems just and equitable.

Respectfully submitted,

Dated: July 6, 2020

/s/ Christopher J. Williams
Christopher J Williams (ARDC No. 6284262)
National Legal Advocacy Network
53 W. Jackson Blvd, Suite 1224

22

Chicago, IL 60604
(312) 795-9121

Mark H. Birhanu (ARDC No. 6332462)
Miranda Huber (ARDC No. 6332830)
Legal Department
Raise the Floor Alliance
1 N. LaSalle Street, Suite 1275
Chicago, IL 60201
(312) 795-9115

Plaintiff's Attorneys